<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PORTVIEW PROPERTIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CORECIVIC, INC. and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | Civil Action No: 22-03220 (SDW)(CLW) <br><br> **OPINION** <br><br><br> January 24, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendant United States Immigration and Customs Enforcement's ("ICE" or "Defendant ICE") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure ("Rule")12(b)(1) and 12(b)(6), (D.E. 10), and Defendant CoreCivic, Inc.'s ("CoreCivic" or "Defendant CoreCivic") Motion to Dismiss Plaintiff Portview Properties, LLC's ("Portview" or "Plaintiff") SAC pursuant to Rule 12(b)(6), (D.E. 11). Jurisdiction is proper pursuant to 28 U.S.C. § 1442(a)(1). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant ICE's Motion to Dismiss is **GRANTED with prejudice**, and this matter shall be remanded to the Superior Court of New Jersey, Union County.

I. BACKGROUND AND PROCEDURAL HISTORY

This matter arises from a contractual dispute concerning a lease between Plaintiff and Defendant CoreCivic. (*See generally* D.E. 1-1.) Plaintiff is a Delaware Limited Liability Company ("LLC"), with its principal place of business in Elizabeth, New Jersey. (*Id.* ¶ 9.) Plaintiff owns a warehouse building located at 625 Evans Street, Elizabeth, New Jersey ("the Property"). (*Id.*)

Defendant ICE "is a bureau of the United States Department of Homeland Security ("DHS")." (*Id.* ¶ 11.) ICE is an investigative governmental agency that enforces federal immigration law. (*Id.*) ICE is headquartered in Washington D.C. and has a local office in Newark, New Jersey. (*Id.*)

Defendant CoreCivic is a Maryland corporation, with its principal place of business in Brentwood, Tennessee. (*Id.* ¶ 10.) CoreCivic "operates private correctional and detention facilities" throughout the country. (*Id.*) CoreCivic has contracted with ICE to operate and manage a private Immigration and Customs Enforcement ("ICE") detention facility—the Elizabeth Detention Center ("EDC")—at the Property. (*Id.* ¶¶ 2, 10.) CoreCivic has leased the Property and operated and managed the EDC since 1993. (*Id.* ¶ 10.)

A. The Lease Agreement

On December 13, 1993, the Elberon Development Company ("Elberon"), owner of the Property, and Esmor, Inc. ("Esmor"), tenant of the Property, entered into a lease agreement (the "Lease") in which Esmor leased 94,909 square feet of space to be used as an ICE facility that would accommodate immigrants detained at John F. Kennedy and Newark Airports. (*Id.* ¶¶ 13–14.) The Lease had an original term of "five (5) years, six (6) months, seventeen (17) days[,] commencing on December 15, 1993 and ending on June 30, 1999." (*Id.* ¶ 13.) Section 3(a)

restricted Esmor's use to the use specified in the Lease, specifically that it would be used as a secure immigration facility, and any "change of use or classification without [Elberon's] prior written consent" would constitute a default. (*Id.* ¶ 14.) Section 3(g) of the Lease provided that Esmor "shall observe and comply with all applicable federal and state statutes, municipal ordinances[,] and all rules, regulations, orders, and decrees of any federal, state[,] or municipal authority having jurisdiction over the [Property] and its use." (*Id.* ¶ 15.) Section 12 provided that failure to comply with the terms of the lease would "be considered a non-monetary default," and the owner of the Property must give Esmore thirty days to cure the default, or at least commence curing the default, if the cure will take longer than thirty days. (*Id.* ¶ 17.) If a default occurred, the Lease further provided the owner the opportunity to enter the Property without liability, make any such necessary repairs or alterations, and relet the Property at Tenant's expense. (*Id.*) The Lease also provided that any failure of Elberon to require prompt performance was not a waiver of a future right to do so. (*Id.* ¶ 18.)

After the Lease commenced, the parties made several amendments and changes. On June 13, 1996, Esmor assigned the Original Lease to Juvenile and Jail Facility Management Services, Inc. d/b/a CCA ("CCA"). (*Id.* ¶ 19.) On March 31, 1999, Elberon and CCA amended the lease to allow CCA to use an additional parking area, but all other terms and conditions remained in effect. (*Id.* ¶ 20.) On December 21, 2001, Elberon assigned the Lease, including amendment and assignments, to Plaintiff, which assumed all obligations under the Lease and remains the owner of the Property. (*Id.* ¶ 21.) On June 7, 2004, the Lease was amended to extend the term from June 30, 2004 to June 30, 2005, and to "provide[] CCA with an option to renew and extend the Lease Agreement for either five (5) or ten (10) years from June 30, 2005 . . . ." (*Id.* ¶ 22.) All other terms and conditions were to remain the same. (*Id.*) On January 10, 2008, the Lease was amended

3

to address a billing agreement between the parties, with all other terms and conditions remaining the same.  (*Id.* ¶ 23.)  On October 29, 2010, the parties amended the Lease to clarify obligations concerning CCA's use of the parking lots at the Property, with all other terms and conditions remaining the same.  (*Id.* ¶ 24.) On March 15, 2015, the parties amended the Lease and extended the term from June 30, 2015 to June 30, 2022, and provided CCA an option to extend the lease from June 30, 2022 to June 30, 2027, with appropriate notice to Plaintiff.  (*Id.* ¶ 25.)  In Section 7 of the fifth amendment to the Lease, the parties amended the first fourteen lines of Section 3(a) to provide as follows:

> Tenant warrants and represents that its occupancy of the demised premises is for a secure United States Immigration and Customs Enforcement ("ICE") facility to accommodate immigrants detained in accordance with that certain contract for the provision of detention services between Tenant and ICE dated July 1, 2005, as amended and as may be amended from time to time during the term and any renewal term ("ICE Contract").  Tenant warrants and represents that its NAICS number is 541600.  Owner agrees to cooperate with Tenant if Tenant pursues a change in use of the demised premises.  Tenant at all times shall comply with existing governmental approvals, including but not limited to those issued by the City of Elizabeth, NJ.  Tenant will provide written notice to Owner of any change in use of the demised premises along with copies of all permits.

(*Id.* ¶ 26 (emphasis omitted).)  All of the Lease's other terms and conditions remained the same.  (*Id.* ¶ 25.)  On November 9, 2016, CCA changed its name to CoreCivic, Inc.  (*Id.* ¶ 27.)  On July 31, 2017, the parties amended the Lease to update provisions concerning the parking area, and further provided that all unmodified terms and conditions remained in effect.  (*Id.* ¶¶ 28–30.)

    B.  <u>Allegations of Breach of the Lease Agreement</u>

To understand Plaintiff's allegations concerning breach of the Lease, it is necessary to first discuss a separate contract between Defendants.  The ICE Contract—to which Plaintiff is not a

4

party—is a contract between CoreCivic and ICE and is set to end on August 31, 2023.[1]  (*Id.* ¶ 44.) Plaintiff alleges that the ICE Contract requires CoreCivic "to follow the detention standards set forth by ICE's 2011 Performance-Based National Detention Standards, as amended in 2016 ("2011 PBNDS")" and to "comply with CDC guidelines for the prevention and control of infectious and communicable diseases." (*Id.* ¶¶ 31–32.)  According to Plaintiff, in March of 2020, "the CDC issued guidelines for correctional and detention facilities to reduce the spread of [COVID-19]" and ICE subsequently adopted procedures based on those guidelines, but CoreCivic failed to follow the protocols ICE adopted. (*Id.* ¶¶ 33–34.)  Plaintiff puts forth that the allegations in a currently pending class action matter[2] concerning Habeas Corpus petitions of six individuals who were held in EDC in May of 2020 reflect that CoreCivic and ICE "violated federal law by ignoring the COVID-19 safety guidelines set forth by the CDC."  (*Id.* ¶ 35.)  Plaintiff contends that the petitioners allege that CoreCivic may have violated the Lease by "fail[ing] to meet the basic safety, health care, sanitation, and hygiene needs" of the confined persons; "fail[ing] to suspend new admissions and enforce screening protocols" to mitigate the spread of COVID-19 in the facility; "fail[ing] to enforce protocols that would mitigate the spread of COVID-19 within the facility"; failing to provide adequate "sanitary and hygienic supplies"; "affirmatively adopt[ing] some protocols that are likely to increase the chances that COVID-19 will spread" in the facility; and "fail[ing] to enforce protocols that would effectively treat those who are suspected or confirmed to have COVID-19." (*Id.* ¶ 36; *see also* ¶ 37.)

---

[1] Plaintiff asserts that New Jersey's Anti-Detention Law, which was signed by Governor Phil Murphy on August 20, 2021, effectively prohibits CoreCivic from renewing and extending the Ice Contract past the August 31, 2023 termination.  (*Id.* ¶¶ 42–45.)

[2]  *See Agnan, et al. v. Rodriguez, et al.*, No. 20-cv-5922(ES).

5

Plaintiff sent a cure-demand letter to CoreCivic on December 2, 2020, in which Plaintiff advised CoreCivic that because allegations of improper treatment of detainees at the Property had been made in the pending class action matter, "[d]emand is hereby made for you to immediately advise as to your plans to cause your occupancy of [the Property] to be in conformance with the terms of the Lease." (*Id.* ¶ 39.)

On December 30, 2020, CoreCivic's counsel sent a letter response in which CoreCivic asserted that it complied "with its obligations under the ICE Contract and under applicable law," and contended that even if any rule or procedure it followed during the pandemic had violated any applicable law, such a violation "would not constitute an actionable breach of the Lease," and would be subject to the cure rights under the Lease. (*Id.* ¶ 40.) Further, CoreCivic assured Plaintiff it would "comply with all applicable governmental requirements and court orders" concerning the Property. (*Id.*)

Plaintiffs, "upon information and belief," contend that "Defendant [CoreCivic] continues to operate the EDC without regard to CDC and ICE COVID-19 safety guidelines and requirements." (*Id.* ¶ 41.)

C. Procedural History

On May 3, 2021, Plaintiff filed a two-count Complaint against CoreCivic in the Superior Court of New Jersey, Law Division, Union County. (*See* D.E. 10-1 at 12; D.E. 11-1 at 13; D.E. 18 at 15.) On July 21, 2021, CoreCivic filed a motion to dismiss Plaintiff's Complaint. (*See* D.E. 10-1 at 13; D.E. 11-1 at 13; D.E. 18 at 16.) Plaintiff filed a First Amended Complaint ("FAC") on September 9, 2021. (*See* D.E. 10-1 at 13; D.E. 11-1 at 13; D.E. 18 at 16.) On December 28, 2021, by Decision and Order, the Honorable John G. Hudak, J.S.C. granted CoreCivic's motion to dismiss the FAC and found that Plaintiff did not have standing to proceed with a contract claim

because it was not a party to the ICE Contract, and the matter could not proceed without ICE becoming a party to the litigation. (*See* D.E. 10-1 at 13; D.E. 11-1 at 13; D.E. 18 at 17.) On March 8, 2022, Plaintiff filed a Second Amended Complaint ("SAC"), in which it added ICE as a "nominal defendant." (D.E. 10-1 at 14; D.E. 11-1 at 13; D.E. 18 at 17.) In the SAC, Plaintiff alleges breach of contract (Count I); requests a declaratory judgment

> adjudging and declaring: (a) that Defendant is required to adhere to and implement the COVID-19 safety guidelines, rules, regulations, orders, decrees[,] and recommendations set forth by the CDC in its operation and management of the EDC; (b) that Defendant is in default of the Lease Agreement; (c) that the Lease Agreement is terminated pursuant to its terms; and (d) that Defendant shall vacate the Premises

(Count II); and requests a declaratory judgment

> adjudging and declaring: (a) that Defendant, pursuant to its Lease Agreement with Plaintiff, is required to operate and maintain the EDC in accordance with the ICE Contract; (b) that the ICE Contract, by its terms, expires as of September 30, 2023; (c) that pursuant [to] the New Jersey Anti-Detention Law, Defendant is legally prohibited from entering into, renewing, or extending any agreement (including the ICE Contract) to house or detain individuals at the EDC for federal civil immigration violations under the authority of the Immigration and Nationality Act (8 U.S.C. § 1101 [*et seq*.]); and (d) that Defendant cannot, therefore, operate or maintain an immigration detention facility at the EDC pursuant to the ICE Contract (or any other contract, agreement, intergovernmental service agreement, or memorandum of understanding) beyond September 30, 2023

(Count III). (D.E. 1-1 ¶¶ 47–64.) On May 16, 2022, CoreCivic filed a Motion to Dismiss the SAC. (D.E. 10-1 at 14; D.E. 11-1 at 13–14; D.E. 18 at 17.) On May 27, 2022, ICE removed the matter to federal court pursuant to 28 U.S.C. § 1442(a)(1). (D.E. 1 at 1–6.) On July 22, 2022, ICE moved to dismiss the SAC, (D.E. 10); on July 26, 2022, CoreCivic moved to dismiss the SAC, (D.E. 11); and the parties thereafter completed timely briefing, (D.E. 16; D.E. 18; D.E. 20; D.E. 22).

7

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Subject matter jurisdiction establishes a court's "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, No. 1999-130, 2006 WL 3298270, at *1 (D.V.I. Sept. 21, 2001), *aff'd and adopted by* 486 F.3d 806, 808–10, 48 V.I. 1059 (3d Cir. 2007). A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) by challenging jurisdiction facially or factually. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action (Schering Plough)*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack 'contests the sufficiency of the complaint because of a defect on its face,' whereas a factual attack 'asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites.'" *Halabi v. Fed. Nat'l Mortg. Ass'n*, Civ. No. 17-1712, 2018 WL 706483, at *2 (D.N.J. Feb. 5, 2018) (quoting *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015)). A motion to dismiss for lack of standing is considered a facial attack. *Schering Plough*, 678 F.3d at 243. "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa.*, 757 F.3d at 358 (citing *Schering Plough.*, 678 F.3d at 243)).

8

B.  Rule 12(b)(6)

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 235–36 (3d ed. 2004)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555)).

When considering a Motion to Dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

9

### III. DISCUSSION

#### A. Claims Against ICE

ICE contends that Plaintiff's claims should be dismissed for lack of standing, and, consequently, lack of subject matter jurisdiction. Article III of the United States Constitution limits the power of the federal judiciary to the adjudication of actual "cases" or "controversies." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). To enforce the "case" or "controversy" requirement, Article III requires that a litigant "have 'standing' to invoke the power of a federal court . . . ." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing, therefore, is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff has standing to sue if:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Importantly, because ICE is a government agency, the United States must consent to be sued, and that consent is a prerequisite for jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (second alteration in original) (quoting *United States v. Sherwood*, 312 U.S. 584, 586

(1941))). The party asserting claims against the United States bears the burden of establishing that the United States has waived sovereign immunity. *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361 (3d Cir. 2001).

Here, when viewing the facts declared in the Complaint in the most favorable light to Plaintiff, the Complaint does not set forth any concrete and particularized allegations against ICE, does not allege that Plaintiff has suffered an injury in fact caused by ICE, and does not claim an actual invasion of Plaintiff's legally protected interest or interests by ICE. *See Lujan*, 504 U.S. at 560–61. In fact, Plaintiff, in its briefing to this Court, readily admits that "none of the claims asserted in Plaintiff's SAC are directed to ICE." (D.E. 18 at 19.) There is no purported injury pertaining to the alleged breach of the Lease that can be traced to ICE. ICE is not a party to the Lease and Plaintiff has not made allegations of wrongdoing by ICE. *Id.*

Moreover, the underlying premise of the alleged Lease breach rests on an alleged breach of the ICE Contract, yet the Complaint fails to purport that ICE has alleged, confirmed, or pursued CoreCivic for any such breach. Plaintiff is not a party to the ICE Contract or a third-party beneficiary of the contract and has only included ICE as a "nominal defendant" because the Superior Court of New Jersey, Union County, set forth that ICE was an indispensable party. (D.E. 18 at 19–20.) The finding by the Superior Court, however, does not impact whether Plaintiff has standing to pursue claims against ICE, and does not confer subject matter jurisdiction to this Court to hear Plaintiff's claims against ICE. In sum, Plaintiff has not demonstrated that the United States has consented to being sued, *Mitchell*, 445 U.S. at 538, and Plaintiff has not alleged any concrete or particularized injury or invasion of interest by ICE, *Lujan*, 504 U.S. at 560–61.[3] Consequently,

---

[3] Because this Court has found that it does not have Subject Matter Jurisdiction to hear Plaintiff's claims against ICE, this Court declines to examine the merits of the claims pursuant to Rule 12(b)(6).

this Court finds that Plaintiff lacks standing to pursue claims against ICE and, in turn, dismisses Plaintiff's claims against ICE.

    B.  Claims Against CoreCivic

The dismissal of claims against ICE prompts this Court to *sua sponte* reconsider its jurisdiction. ICE removed this matter to this Court pursuant to 28 U.S.C. § 1442(a)(1), which provides:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

ICE's dismissal from the matter impacts this Court's jurisdiction. The remaining parties have not asserted diversity jurisdiction, pursuant to 28 U.S.C. § 1332, and the Complaint does not present a federal question, pursuant to 28 U.S.C. § 1331. Further, the matter exclusively presents state-law claims, and this Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). This matter, therefore, shall be remanded to the Superior Court of New Jersey, Union County.[4] *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

---

[4] Accordingly, it would be inappropriate for this Court to analyze the merits of CoreCivic's Motion to Dismiss.

## IV. CONCLUSION

For the reasons set forth above, Defendant ICE's Motion to Dismiss is **GRANTED with prejudice**, and this matter shall be remanded to the Superior Court of New Jersey, Union County. An appropriate order follows.

                                               /s/ Susan D. Wigenton
                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Cathy L. Waldor, U.S.M.J.
              Parties